UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLIE STONE,

     Plaintiff,

v.

                                  Case No. 1:24-cv-1281
                                  Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on October 25, 2021, alleging a disability onset date of February 1, 2012. PageID.38. Plaintiff listed a number of disabling conditions.[1] Plaintiff completed the 12th grade and had past relevant work as a cashier. PageID.46. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a partially favorable written decision on October 13, 2023. PageID.38-48. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.      LEGAL STANDARD

---

[1] Plaintiff listed the following conditions which limited her ability to work: broke back as a child; back goes out; difficulty standing; foot condition; carpal tunnel surgery; depression; high cholesterol hypoglycemia; asthma allergies; arthritis in both knees; and, migraines. PageID.318.

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 1, 2012, and that she met the insured status requirements of the Social Security Act through December 31, 2016.  PageID.40. At the second step, the ALJ found that plaintiff has severe impairments of degenerative disc disease, osteoarthritis, carpal tunnel syndrome, asthma, a soft tissue injury to the lower extremity, depression, and an intellectual disability.  PageID.40-41.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.41.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that since February 1, 2012, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift or carry up to 15 pounds; can occasionally climb ladders and crawl; frequently climb ramps or stairs, bend, stoop, kneel, and crouch; should avoid concentrated feeling and use of power tools with the right upper extremity; and should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dust, and gasses. The claimant is limited to performing simple, routine, and repetitive tasks in work with few, if any, changes in the work setting and no production rate paced work.

PageID.43. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.46.

At the fifth step, the ALJ found that plaintiff could perform a significant number of sedentary, unskilled jobs in the national economy.  PageID.46-47.  Specifically, the ALJ found

that based on the vocational expert's (VE's) testimony, plaintiff could perform the requirements of the following jobs: office clerk (60,000 jobs), account clerk (48,000 jobs), and interviewer (25,000 jobs).  PageID.47.   However, the ALJ also found that,

> Beginning on the date the claimant's age category changed [August 25, 2017], considering the claimant's age, education, and work experience, a finding of "disabled" is reached by direct application of Medical-Vocational Rule 201.12.

PageID.48.

Based on this record, the ALJ made separate findings on DIB and SSI.  With respect to DIB, "[t]he claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2016, the date last insured."  *Id*.  With respect to SSI, "[t]he claimant was not disabled prior to August 25, 2017, but became disabled on that date and has continued to be disabled through the date of this decision (October 13, 2023).  *Id*.[2]

The Court construes plaintiff's appeal as directed at her unsuccessful claim for DIB which involves the relevant time period from the alleged onset date (February 1, 2012) through the date last insured (December 31, 2016).

### III.    DISCUSSION

Plaintiff set out two errors:

**A. The ALJ errs by failing to incorporate upper extremity limitations into its residual functional capacity (RFC), and otherwise failing to provide a proper logical bridge or properly evaluating subjective symptoms.**

The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and

---

[2] The ALJ further advised that, "[t]he component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made."  PageID.48.

brackets omitted). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff contends that the ALJ failed incorporate her extensive upper extremity limitations in the RFC. As discussed, the ALJ found that plaintiff had severe impairments of osteoarthritis and carpal tunnel syndrome. To address these impairments, the ALJ found that plaintiff "should avoid concentrated feeling and use of power tools with the right upper extremity". PageID.43. The RFC is based on a hypothetical question posed to the VE which assumed that the person "has limitations with her right upper extremity; avoid concentrated feeling on the right and use of power tools with the right". PageID.81-82. Based on this hypothetical, the VE testified that plaintiff could perform unskilled jobs such as office clerk, account clerk, and interviewer. PageID.82.

Plaintiff contends that she has more limited use of her upper extremities than reflected in the RFC. To address this issue, plaintiff's counsel asked the VE if her answer would change if the hypothetical person was limited to "occasionally handling and fingering with her dominant upper extremity". PageID.83. The VE testified that this limitation "would eliminate all three of the jobs that I've listed." *Id*.

Plaintiff contends that the ALJ did not properly evaluate her RFC as required by SSR 16-3p, which sets out the two-step process for evaluating an individual's symptoms: (1) "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms;" and, (2) "We evaluate the

intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *See* 20 C.F.R. §§ 404.1529(c)(1)-(2). The Commissioner also considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3).

Here, the ALJ recognized that plaintiff had bilateral carpal tunnel syndrome, noted that it was not addressed by surgery until after plaintiff's disability was established in 2017, and that the problem remained after surgery:

> The claimant also suffers from bilateral carpal tunnel syndrome, as confirmed through EMG testing (Exhibit 3F/336) [per Dr. Patel's note February 26, 2018]. Specifically, the testing showed severe right and moderate left carpal tunnel syndrome (Exhibit 3F/336). The claimant trialed multiple conservative protocols including bracing, anti-inflammatory medication, and physical therapy, though these measures failed to provide significant relief in pain or improvement in flexibility (Exhibit 3F/336). The claimant ultimately required surgery to address her symptoms, though this occurred in 2018, after the date in which disability is established (Exhibit 3F/360) [March 1, 2018]. Even so, imaging performed after the procedure indicated that the condition remained present bilaterally (Exhibit 3F/375) [December 4, 2018].

PageID.44.

Plaintiff contends that her medical problems with the upper extremities began before 2018 and were more extensive than reflected in the ALJ's summary paragraph. Plaintiff had problems as early as February 2015 when she had multiple infected cat bites on her left hand.

PageID.1237.  Plaintiff injured her right shoulder while lifting the garage door and started physical therapy in June 2015 with diagnoses of right shoulder pain, right carpal tunnel, and neck pain. PagreID.1246-1247.  After a fall on her left upper extremity she suffered swelling as reflected in treatment notes from November 23, 2015.  PageID.1251.  In December 2015, plaintiff still had serious pain in her left hand after 13 physical therapy visits.  PageID.1252.

On January 9, 2016, plaintiff underwent an MRI of the left upper extremity which showed (1) soft tissue edema adjacent to extensor pollicis brevis and abductor pollicis longus tendons, suggesting partial tear or tenosynovitis, and (2) high single intensity in scapholunate ligament, possibly a tear.  PageID.1254.  Plaintiff continued with physical therapy for upper extremities from January 27, 2016, to February 23, 2016, and then from March 9, 2016, to March 29, 2016. PageID.424.  A cervical spine CT scan in May 2016 (taken for reported neck pain) showed mild disc degenerative changes at C5-C6.  PageID.1256.  This evidence reflects that plaintiff's upper extremity problems existed more than a year before the last date insured (December 31, 2016).

At the administrative hearing, the ALJ asked plaintiff a few questions about her condition in 2012.  When asked have "things gotten worse or better, were you able to do more then or has it been pretty much the same?", plaintiff responded "it's gotten worse."  PageID.71. Although not entirely clear, it appears at that time that plaintiff's hand would start hurting when she lifted a bag of potatoes at the grocery store, and that she could lift a half gallon of milk but not a gallon.  PageID.72.

The ALJ also reviewed the opinion evidence related to plaintiff's claim.  The ALJ found that the opinions of the non-examining consultants were not persuasive:

> The opinions of the Disability Determination Services (DDS) consultants who evaluated the claimant's physical condition are not persuasive (Exhibits 3A,

4A, 6A, 7A, 11A, 12A). The DDS consultants found that the claimant could perform work within the light level of exertions, with additional postural, manipulative, and environmental limitations. The undersigned finds that the combination of impairments related to the claimant's back, knees, feet, and hands, as confirmed through objective evidence, appropriately limit the claimant to performing sedentary work. Specifically, the claimant's foot and knee conditions limit her ability to stand and ambulate within the range necessary to complete work at light exertional levels, and the decreased use of her upper extremities and back pain further reduce her lifting capacity.

PageID.45.[3]

The ALJ apparently relied on the opinions of consultative examiner Dr. Scott Lazzara as "generally persuasive". PageID.45. Dr. Lazzara examined plaintiff on May 13, 2022. However, this examination did not address plaintiff's condition as it existed before her date last insured. PageID.1014-1020. The ALJ summarized Dr. Lazzara's opinion as follows:

Dr. Scott Lazzara completed a physical consultative examination on May 13, 2022 (Exhibit 6F). Dr. Lazzara found that the claimant could stand for up to 4 hours in a workday, could push less than 15 pounds, required assistance climbing stairs, and ambulated with a compensated gait but did not require the use of an assistive device. Dr. Lazzara's findings are consistent with reducing the claimant to performing work within the sedentary level of exertion. While his examination was performed after the period in which disability is established in this case, his findings reasonably relate to conditions which were present prior to that date, as supported by objective evidence. Dr. Lazzara's findings are generally persuasive.

PageID.45.

Based on this record, the ALJ's decision did not adequately evaluate plaintiff's RFC as it existed at her date last insured. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz*). "It is more than merely 'helpful' for the ALJ to articulate

---

[3] Exhibits 3A and 4A address a previous claim for benefits filed on October 12, 2011. PageID.92-107. Exhibits 6A and 7A address plaintiff's present claim. PageID.109-120-132. Exhibits 11A and 12A address reconsideration of plaintiff's present claim. PageID.136-159.

reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  As discussed, the ALJ did not address plaintiff's upper extremity condition as it existed in 2015 and 2016.  In addition, the ALJ did not create a logical bridge to connect plaintiff's condition before the date last insured (December 31, 2016) with Dr. Lazzara's examination results reported on May 13, 2022. Accordingly, this matter should be reversed and remanded pursuant to 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate the limitations to plaintiff's upper extremities between the alleged onset date (February 1, 2012) and the date last insured (December 31, 2016).

> **B. The ALJ errs by making similar errors as to the combined effects of, inter alia, the back/knee/foot impairments and problems sitting, using foot controls, and, more generally, persisting.**

The ALJ found that plaintiff had severe impairments of degenerative disc disease, osteoarthritis, and a soft tissue injury to the lower extremity.  PageID.40-41.  In this issue, plaintiff appears to contend that the ALJ failed to weigh the functional effects of her "intermittent chronic back pain since childhood"; that the ALJ incorrectly concluded that plaintiff "could sit in an unlimited fashion"; and, that the combination of her back, knee and foot problems affected her ability to sit and use foot pedals.  *See* Plaintiff's Brief (ECF No. 19, PageID.1737-1739) (referring to plaintiff's testimony that she can only sit for five or ten minutes and drive for about 20 minutes, PageID.72-73).

The ALJ addressed plaintiff's history of back problems (since childhood), knee problems (since 2012), and foot problems (since 2014) as follows:

> The claimant has a long history of spinal pain, with treatment extending to well before her alleged onset date, reportedly as the result from a fracture as a child (Exhibit 3F/15, 33). Imaging performed on July 14, 2012, showed a prominent L1

Schmorl's node and associated compression fracture of the superior endplate (Exhibit 3F/15). Additionally, right facet arthropathy was present at L5-S1 (Exhibit 3F/15). An MRI performed the following month revealed disc bulges at L2-3, L3-4, and L5-S1 (Exhibit 3F/31). The record also contains evidence of multiple acute spinal injuries which exacerbated the claimant's symptoms, and which were treated symptomatically and with physical therapy (Exhibit 3F/62). Imaging performed in 2018 indicated that the condition had worsened, notably with disc space narrowing at L1-2 (Exhibit 3F/365). Later, imaging performed during the consultative examination revealed the presence of ongoing moderate osteoarthritis in the lumbar spine (Exhibit 9F).

The claimant was diagnosed with left knee chondromalacia patella of the left knee in October of 2012 (Exhibit 3F/76). Degenerative changes were also noted (Exhibit 3F/101). This injury required surgical repair, with postoperative limitations on the claimant's ability to bear weight put in place (Exhibit 3F/87, 101). The claimant also initiated physical therapy, with treatment notes indicating decreased flexion, extension, and strength (Exhibit 3F/104) [January and February 2013].

Later, imaging of the claimant's left lower extremity additionally revealed degenerative changes at the second tarsometatarsal joint with dorsal spurring (Exhibit 3F/214). On September 5, 2014, the claimant underwent an exostectomy to address this condition (Exhibit 3F/222). The claimant required further surgery for a recurrent ganglion cyst on her foot (Exhibit 3F/266). Notably, this condition was present throughout 2014 and 2015, thereby meeting the durational requirement as a severe condition for the relevant period (Exhibit 3F/283).

Additional imaging performed at the consultative examination showed mild osteoarthritis in the bilateral knees (Exhibit 9F/2) [October 2022].

PageID.44.

As with the claims addressed in § III.A., the ALJ's decision does not adequately evaluate plaintiff's RFC with respect to her back, knees and foot as it existed at her date last insured.  While the ALJ acknowledged that plaintiff experienced "multiple acute spinal injuries" which exacerbated her symptoms, he did not address those injuries in a meaningful manner, citing one treatment note from August 3, 2012 (Exh. 3F/62).  While the ALJ noted plaintiff's left knee condition in 2012 and 2013, and her left lower extremity condition in 2014 and 2015, he did not

11

make any particular findings as to how these conditions limited plaintiff's ability to perform work related activities before the date last insured.

Based on this record, the ALJ has failed to articulate an analysis of the evidence to allow the Court to trace the path of his reasoning as it relates to her back, knee and foot impairments which existed before the date last insured. *See Diaz*, 55 F.3d 300, 307 (7th Cir. 1995); *Hurst*, 753 F.2d at 519; *Stacey*, 451 Fed. Appx. at 519. Accordingly, this matter should be reversed and remanded pursuant to 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the limitations caused by plaintiff's back pain, knee pain, and foot pain between the alleged onset date and the date last insured.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the limitations to plaintiff's upper extremities, and the limitations caused by plaintiff's back pain, knee pain and foot pain, between the alleged onset date (February 1, 2012) and the date last insured (December 31, 2016).

Dated: February 25, 2026                    /s/ Ray Kent
                                            Ray Kent
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).